513 So.2d 361 (1987)
STATE of Louisiana
v.
Donald K. MORGAN.
No. K 7659.
Court of Appeal of Louisiana, Fourth Circuit.
September 15, 1987.
Writ Denied November 20, 1987.
Harry F. Connick, Dist. Atty., Kelann E. Larguier, Asst. Dist. Atty., New Orleans, Eileen P. Comiskey, Law Clerk for respondent.
Donald K. Morgan in pro. per.
Before SCHOTT, CIACCIO and ARMSTRONG, JJ.
SCHOTT, Judge.
This case is before us on defendant's pro se application for writs from the trial court's denial of his application for post conviction relief.
Defendant was indicted for first degree murder in the fatal shooting of Dennis Forget on July 9, 1983. He was convicted by the jury of second degree murder and was sentenced to life imprisonment at hard labor. His conviction was affirmed by this court (KA-2499) on October 11, 1985 in an unpublished opinion following a review for errors patent on the face of the record. In October 1986 he applied to the trial court for post conviction relief based upon his appeal counsel's failure to address three issues which he says were raised at the trial and found to be without merit by the trial court. These issues or claims were that: 1) questions put to the defendant in cross examination by the prosecutor which *362 produced evidence of previous arrests were inadmissible and trial counsel's motion for mistrial was erroneously denied; 2) the jury was improperly impaneled in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776; and 3) inadmissible evidence of a prior crime committed by defendant was produced by the state.
In rejecting defendant's application the trial court stated:
"The first and third grounds concern evidence presented, matters which would have been patent on the face of the record when this case was presented to the Fourth Circuit on Appeal.... Since the Court of Appeal must be presumed to have noticed and considered these, these ground are hereby denied."
"The second ground presented concerns erroneous use of the Witherspoon doctrine in selection of the jury. Inspection of the current jurisprudence reveals no error in this matter."
Because of the conclusion we reach as to the first claim we need not address the others. However, for the benefit of a reviewing court should it deem our disposition of the first claim to be erroneous we find that the other claims have no merit for the reasons stated.
As to the Witherspoon claim defendant was properly indicted for first degree murder based upon evidence that he conspired with a prostitute to set the victim up for theft and that he shot the victim during a struggle which developed from the victim's attempt to retrieve his billfold from the defendant. There is no support beyond sheer speculation for the position that the state proceeded with the first degree murder charge knowing that the evidence did not support the charge and for the purpose of obtaining a jury which would be suitable for a first degree murder trial.
Claim 3 is based upon the state's introduction of evidence that the defendant had shot Albert Emmanuel in September, 1981. While defendant was under cross examination he volunteered, while denying that he committed the crime charged, that he never did shoot anybody. The prosecutor asked him if he had shot Mr. Manuel, he denied it, Manuel was brought into the court room and exhibited to defendant, and he again denied having shot him. No objection was made to the questions or procedure by defense counsel. On rebuttal the state called Manuel as a witness. He testified that on September 28, 1981 the defendant shot him in the stomach while he, Manuel, was unarmed. He also testified that he came to the trial from the state penetentiary where he was serving a sentence for burglary. There was no objection to his testimony by the defense.
Defendant's present application is based upon ineffective appeal counsel. Since no contemporaneous objections to the evidence concerning Manuel were made his appeal counsel was under no duty to raise the issue on appeal.
Returning to the first claim the trial court erred in concluding that this court considered the claim along with claim 3 when the case was on appeal. In a review of a criminal record for errors patent an appellate court does not review the transcript of the testimony and consider the validity of rulings made by the court during the course of the trial. Such rulings can be brought to this court's attention only by specific assignments of error made by the defendant in connection with his appeal. Defendant's trial counsel preserved the record for an appeal based on claim 1 but his appeal counsel did not assign the ruling as an error so it was not previously considered by this court. Consequently, we are now considering the claim for the first time but in the same way and to the same extent as we would have had it been brought to our attention when the case was on appeal.
Defendant's conviction rests primarily on the testimony of Paulette Hatcher and James Shawn Roberts. She testified that she was forced by the defendant to solicit the victim for prostitution and make him vulnerable to theft or robbery by the defendant while he, the victim, was in a hotel room with Hatcher. She stated that after she and the victim got to a room she contacted *363 the defendant, he came into the room and demanded the victim's billfold, the victim followed the defendant from the hotel into the street, and a fight ensued. Hatcher stated that she saw the defendant take out a gun and shoot the victim. Roberts testified that he was outside the hotel when the victim and the defendant came out; they were arguing and began to fight when the defendant drew a gun and shot the victim.
The defense was based on the theory that Roberts was motivated to testify against the defendant because he, Roberts, was a suspect in the murder, and because he was angry with defendant for beating him a few days before the crime. The evidence did establish that both Roberts and Hatcher had been arrested for the murder and only after Roberts was in jail for twenty-two days did he implicate the defendant. During this time Roberts denied he saw the shooting. In answer to why he decided to tell the truth Roberts replied, "I was thinking about it. And then, I say, `Why should I go to jail for somebody else?'"
The defendant took the witness stand in his own behalf. He testified that he had been arrested for another crime on July 22, 1983 and was in jail in November when he was rebooked for the first degree murder of Dennis Forget. He denied any knowledge of the murder and said that Roberts had threatened to get even with him and was known to carry guns.
On cross examination defendant admitted he was arrested on July 22, 1983 for being in possession of a stolen car and was convicted of this offense. He also admitted pleading guilty to attacking two sheriffs and two counts of attempted residence burglary. Then followed these questions by the prosecutor and answers by defendant:
"Q Now, June 3, 1983, you were arrested 1:47 a.m.?
A I don't know
Q In the company of Henry Walker and Melvin Magee.
A I was arrested in their company now.
Q Driving a car?
A Yes.
Q 1:47 a.m.
A I don't know what time it was."
At this point no objection was made by defense counsel and cross examination continued on a wide variety of subjects outside of the previous arrest. Then the prosecutor began to question defendant about his activities after he left school in 1979 and about a four month period when he worked. The following testimony ensued:
"Q From '79 to '84 you had one job and that was at Victoria Station?
A Why is that? Because I went to Scotland after that.
Q Scotlandville?
A Ah-ha
Q You escaped from there, too, didn't you?
A Yes, I did.
Q How many times?
A. I don't recall
Q At least three?
A Two.
Q What were you in Scotlandville for?
A For breaking a car window."
There was still no objection by defense counsel and questioning continued about defendant's relationship with Roberts and Hatcher. Then the prosecutor asked if he ever shot anyone and the following ensued:
"A No, I never did shoot anybody.
Q Never?
A No.
Q Never shot Mr. Manuel.
[at this point Manuel was brought into the courtroom]
A I still say I never did shoot him.
Q You own guns?
A No, I don't never had guns.
Q When you were arrested with Henry Walker and Melvin Magee, all three of you did have a gun, and it was stolen?
A No, ma'm.
Q That wasn't you?
A I was arrested, but I didn't have no gun."
*364 At this point defense counsel stated to the court, "Your Honor, I think we've had enough. Will you discharge the jury and let me make my objection here." Counsel moved for a mistrial "based on the references in the cross examination to defendant's escapes from Scotlandville and asking questions on that, and other arrests." The trial judge denied the motion and counsel took an exception to the ruling. The record became somewhat confusing at this point because the prosecutor in her argument and the judge in his ruling seem preoccupied with the testimony about Scotlandville whereas the defendant's motion for mistrial was triggered by the state's questions about the June 3, 1983 arrest. The trial judge held that the state was allowed to ask the questions for the purpose of impeachment and allowed the prosecutor to continue her questioning as follows:
"My last question to this witness, Your Honor, was, `Wasn't he found in possession of a gun with Henry Murray and Henry Walker?'
A I was not.
Q The three of you were in a car?
A No
Q Three guns?
A No.
Q This your name?
A Um-hum.
Q That your address?
A That is my address.
Q That was you?
A Yes, that was me."
The ruling of the trial judge allowing the questions about defendant's previous arrest was erroneous because it was contrary to LSA-R.S. 15:495 which provides in part as follows:
"Evidence of conviction of crime, but not of arrest.... is admissible for the purpose of impeaching the credibility of the witness.... and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein."
Evidence of an arrest is never admissible at trial. State v. Smith, 418 So.2d 534 (La.1982); State v. Jones, 480 So.2d 437 (La.App. 4th Cir.1985). The prosecutor's references to defendant's prior arrest constituted references to prior crimes and entitled defendant to a mistrial. C.Cr.P. art. 770; State v. Constantine, 364 So.2d 1011 (La.1978); State v. Green, 315 So.2d 763 (La.1975).
The state argues that defendant may not object to evidence of his prior arrest because he opened the door by volunteering he had been at Scotlandville. We fail to see how this admission opened the door even to the questions about his subsequent attempts to escape, but this provides no basis, in any event, for the prosecutor's questions about the June, 1983 arrest. The state further argues that the trial court's ruling was, at worst, harmless error because the evidence overwhelmingly convicted defendant. But there is no basis for the application of the harmless error rule when C.Cr.P. art. 770 has been violated. The denial of a mistrial which is properly based upon a question prohibited by art. 770 is per se a substantial violation of a statutory right. State v. Green, supra.
Accordingly, the conviction is reversed and the case is remanded for a new trial.
REVERSED AND REMANDED.